**Affirmed as Reformed and Memorandum Opinion filed March 17, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-01013-CR

---

## MAHMOUD AFHAMI, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the County Criminal Court at Law No. 13
### Harris County, Texas
### Trial Court Cause No. 1892708

---

## MEMORANDUM OPINION

Appellant, Mahmoud Afhami, was charged by information with the Class A misdemeanor offense of terroristic threat against a member of appellant's family. A jury found appellant guilty and assessed punishment at a fine of $3,000. In three issues, appellant contends (1) the jury charge allowed conviction for an offense not authorized by the information, (2) the jury charge did not state a proper offense, and (3) the evidence is insufficient to support the conviction. The State presents a cross-point, asserting the judgment incorrectly reflects that the trial court assessed

punishment. We reform the judgment to reflect that the jury assessed punishment and affirm as reformed.

## I. BACKGROUND

We will first consider appellant's third issue, challenging the sufficiency of the evidence to support his conviction. When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*

A person commits the offense of "terroristic threat" if "he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury." Tex. Penal Code Ann. § 22.07(a)(2) (West, Westlaw through 2013 3d C.S.). The offense is a Class A misdemeanor if "committed against a member of the person's family or household or otherwise constitutes family violence." *Id.* § 22.07(c)(1) (West, Westlaw through 2013 3d C.S.). Intent relative to the offense can be inferred from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). It is immaterial whether the victim or anyone else was actually placed in fear of imminent serious bodily injury or whether the accused had the capability or intention to carry out his threat. *Id.* at 305–06. All that is necessary is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury. *Id.* at 306.

In this case, the information (as it existed when the jury charge was submitted) more specifically alleged that, on March 30, 2013, appellant threatened to commit "an offense involving violence, namely assault" against his wife "with the intent to place [her] in fear of imminent serious bodily injury." Under a hypothetically correct jury charge, the method of committing assault that would equate to an "offense involving violence" is "intentionally [or] knowingly . . . caus[ing] bodily injury to another . . . ." *See* Tex. Penal Code Ann. § 22.01(a)(1) (West, Westlaw through 2013 3d C.S.); *see also Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (holding sufficiency of the evidence should be measured by elements of the offense as defined by hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried).[1]

At trial, complainant and another woman, who was complainant's friend and co-worker, collectively gave the following testimony. On March 30, 2013, they were employed at a department store. After their shift ended that evening, they sat visiting in the friend's car in the store parking lot. Appellant parked his vehicle nearby. He was wearing a wig and sunglasses although it was already dark. Complainant told her friend to stay in the car and complainant would find out why appellant was there. Appellant yelled and cursed at complainant and ran towards her. Appellant called complainant "bitch" and "whore" and accused complainant and her friend of prostituting themselves. Appellant shook his index finger several

---

[1] As later discussed with respect to appellant's second issue, he contends, and we agree, that the method of assault defined in the jury charge was inapplicable. However, relative to the present issue, we will measure sufficiency of the evidence against a hypothetically correct charge. *See Malik,* 953 S.W.2d at 240.

times at complainant, which motion in the customs of their nationality (Iranian) means a person intends to harm another. Complainant was frightened because appellant had previously threatened to appear in disguise at her job and kill her. Specifically, during the two-week period before the incident, appellant had made multiple threats to kill complainant with a knife or gun or by splashing acid on her face. Earlier on the day of the incident, appellant phoned complainant, threatening to kill her and accusing her of not being at work. In the parking lot that night, appellant yelled that he had come to make good on his threats and more specifically threatened to kill complainant by throwing acid on her. Mall security intervened, and the police were called.

Additionally, an officer who interviewed complainant and the friend shortly after the incident testified they were frightened and a threat involving a gun was mentioned.

The State also presented a cell phone video of a brief portion of the incident, showing appellant remove a wig and aggressively approach complainant's friend, who had exited the car at some point.

Appellant presented testimony from his brother's wife. She relayed that appellant was upset with complainant during the period before the incident because she had been socializing during late hours with the friend and appellant also suspected complainant of infidelity. Appellant presented this testimony to support his defense by suggesting he merely confronted complainant in the parking lot because he was "heartbroken." However, this testimony also constituted evidence of the intent element of the charged offense by showing appellant's state of mind at the time of the incident.

Based on the above testimony, the jury could have found beyond a reasonable doubt that, on March 30, 2013, appellant threatened to intentionally

4

cause bodily injury to complainant because he threatened to kill her. Further, based on appellant's state of mind and conduct before and at the time of the incident, the jury could have found beyond a reasonable doubt that appellant made the threat with intent to place complainant in fear of imminent serious bodily injury. According, the evidence is sufficient to support the conviction. We overrule appellant's third issue.

## II. JURY-CHARGE ISSUES

We next consider appellant's complaints regarding the jury charge.

## A. Contention that conviction not authorized by the information

In his first issue, appellant's sole complaint is that the jury charge permitted conviction for an offense that was not authorized by the information because the offense submitted in the charge differed from the offense alleged in the information.

As appellant asserts, the information as originally written alleged the threatened "offense involving violence" was aggravated assault with a deadly weapon whereas the application paragraph of the charge required the jury to find the threatened "offense involving violence" was merely assault. However, appellant ignores that, before submission of the case to the jury, the trial court permitted the State to abandon the aggravated-assault-with-a-deadly-weapon language in the information and include only the assault language. Thus, the jury charge mirrored the information as it existed at the time the charge was submitted. On appeal, appellant does not contend the trial court's action in allowing the abandonment was error. Accordingly, we overrule his first issue.

5

**B.    Claim that charge did not state a proper offense**

In his second issue, appellant contends that for two reasons, the jury charge did not state a proper offense.

The focus of appellant's first complaint is the definition of assault submitted in the charge. The trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West, Westlaw through 2013 3d C.S.). A statutorily defined word or phrase must be included in the charge as part of "the law applicable to the case." *Arline v. State,* 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986).

The application paragraph of the charge required the jury to find, *inter alia*, that appellant "threaten[ed] to commit an offense involving violence, namely, assault" upon complainant. Under the Penal Code, there are alternative methods of committing assault, including (1) assault by causing bodily injury, or (2) assault by threatening imminent bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(1), (2) (West, Westlaw through 2013 3d C.S.). The jury charge defined "assault" solely as follows: "a person commits an assault if the person intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse." Thus, the charge defined assault solely as the assault-by-threat method. *See id.* But, the charged offense of terroristic threat, as submitted in the application paragraph, already had a threat component: a "threat[] to commit . . . assault." Consequently, as appellant asserts, a literal reading of the application paragraph together with the definition of assault incorrectly suggested appellant committed the charged offense if he threatened to make a threat. Accordingly, the assault-by-threat method was not the correct definition of assault to include in this particular charge. The correct definition would have been the assault-by-causing-bodily-

6

injury method; i.e, requiring the jury to find that appellant committed the charged offense by threatening to cause bodily injury.

However, appellant failed to timely object in the trial court on the ground presented on appeal. Although appellant made several objections to the charge before it was read to the jury, he did not challenge the definition of assault. *See* Tex. Code Crim. Proc. Ann. art. 36.14. Unobjected-to charge error requires reversal only if it was "fundamental"—error that was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Egregiously harmful errors "are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). Egregious harm is determined on a case-by-case basis and is a difficult standard to prove. *Id. at* 489. In analyzing harm, we consider (1) the entire charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.* Considering the pertinent factors, we conclude appellant did not suffer egregious harm from the inapplicable definition of assault.

The entire charge made clear that the jury must find appellant threatened to cause imminent bodily injury—not that he threatened to make such a threat. As appellant asserts, the latter scenario is nonsensical. Appellant makes that assertion to support his argument, but it actually negates egregious harm and demonstrates the jury understood the proper element of the offense. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013) (plurality op.) (recognizing that inquiry relative to the egregious-harm test may involve discerning whether jury was misled

7

and considering whether "the very clarity of the error . . . may have mitigated any resulting harm").

Specifically, from the application paragraph—requiring that appellant "threaten[ed] to commit an offense involving violence, namely, assault"—the jury was informed it must find a threat to commit an actual act of violence, rather than the nonsensical scenario of a threat to make a threat. Thus, although assault was incorrectly defined as the assault-by-threat method, the jury equated the "threat" component of that definition to the "threat" component of the charged offense. Instead of believing there was some nonsensical requirement of a double threat, the jury understood it must find appellant threatened imminent bodily injury.[2] Our conclusion is supported by the closing arguments; both the prosecutor and appellant's counsel informed the jury it must find that appellant threatened imminent bodily injury. *See id.* at 710 (finding no egregious harm from improper statement of law in jury charge where common sense, the correct portion of the charge, and closing arguments of both prosecutor and defense attorney likely alerted the jury to the error and allowed it to properly apply the law).

Moreover, the jury heard ample evidence that appellant threatened to commit assault under the applicable definition that should have been submitted. As discussed above, the State proved appellant threatened to cause bodily injury to complainant because it proved appellant threatened to kill her at the time of the

_____

[2] We note that the assault-by-threat definition incorrectly submitted in the jury charge requires a threat of **imminent** bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(2). However, the charged offense of terroristic threat does not require that the actor threatened to commit an **imminent** offense involving violence. *See id.* § 22.07(a). As discussed above, we conclude that, despite the incorrect definition of "assault," the jury recognized it must find appellant threatened to cause bodily injury, rather than a threat to make a threat. However, the jury might still have thought, based on the incorrect definition of "assault," that it must find appellant threatened to cause **imminent** bodily injury. Regardless, any such perception of the element of the offense did not cause egregious harm because it merely increased the State's burden of proof. Accordingly, we will refer to the charge as requiring a threat to cause **imminent** bodily injury.

8

incident. Accordingly, the strength of the evidence supports that appellant did not suffer egregious harm from the inapplicable definition of assault submitted in the charge.

Next, appellant complains that the jury charge was erroneous because the requirement that he threatened to cause "imminent bodily injury" was inconsistent with the requirement that he intended to place complainant in fear of "imminent **serious** bodily injury." (emphasis added). We disagree. The requirements for these two different elements comported with the statutory definition of the offense.

The conduct element of the offense generally requires a threat to commit "any offense involving violence to any person or property . . . ." *See* Tex. Penal Code Ann. § 22.07(a). Axiomatically, not every "offense involving violence to . . . person or property" would necessarily rise to the level of causing "imminent **serious** bodily injury." In this case, the charge required the jury to find that the threatened "offense involving violence" was, more specifically, assault, which did not require "imminent **serious** bodily injury." However, because the threatened "offense involving violence" need not be one that would cause "imminent **serious** bodily injury," the conduct element as submitted in the charge comported with the statute. *See id.*

Then, as applicable to this case, the statute does require for the intent element that the threat be made "with intent to . . . place any person in fear of imminent **serious** bodily injury." *See id.* § 22.07(a)(2) (emphasis added). Thus, the intent element in the charge also comported with the statute by requiring the jury to find that appellant made the above threat with intent to place complainant "in fear of imminent **serious** bodily injury." *See id.*

In summary, having rejected both of appellant's challenges to the jury charge, we overrule his second issue.

### III. THE STATE'S CROSS-POINT

Finally, as the State asserts by cross-point, the judgment incorrectly reflects that the trial court assessed punishment when the jury assessed punishment. We have the authority to reform a judgment "to make the record speak the truth." *See* Tex. R. App. P 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we sustain the cross-point.

We reform the judgment to reflect that the jury assessed punishment and affirm as reformed.

/s/    John Donovan
             Justice

Panel consists of Justices Boyce, Jamison, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).