# NO. 12-12-00390-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JACOB ALEXANDER WOODARD,* *APPELLANT* | § | *APPEALS FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jacob Alexander Woodard appeals his conviction for capital murder, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

Appellant and four accomplices decided to rob Robert Darnell Bennett, a man Appellant knew to be a drug dealer who always carried a large amount of cash. In preparation for the robbery, they obtained a rifle and a handgun. As they approached Bennett's house, Appellant had the handgun. One of the accomplices carried the rifle, and another accomplice called Bennett, blocking his telephone number so that it would show as "private" on Bennett's caller identification.

Bennett lived with his girlfriend, Brittney Martin, in Lufkin, Texas. Because Bennett sold drugs, individuals frequently approached his back door to consummate illegal drug transactions. When Bennett received a telephone call from a private number, he believed the caller wanted to purchase drugs, so he exited his back door. When he did, Appellant was standing outside the back door with the handgun behind his back. Bennett asked Appellant if he had called Bennett. Within

seconds, Appellant shot Bennett.

Appellant then went inside Bennett's house to complete the robbery. Illegal substances were in plain sight in the kitchen, and Appellant gathered up what he could. But as Appellant was leaving, Bennett grabbed Appellant's leg. Appellant turned back and again shot Bennett. He then dropped the drugs he had taken from Bennett and ran. Appellant looked for his accomplices, but they had fled after Appellant fired the first shot. Appellant went to a wooded area near Bennett's house, discarded the handgun in a small creek, and went home.

Martin was in the house when Appellant shot Bennett. She called for emergency personnel, but Bennett died from the injuries caused by the gunshot wounds.

The next day, two of Appellant's accomplices spoke with the police and implicated Appellant as the shooter. The police later interviewed Appellant, and he admitted shooting Bennett twice. Appellant claimed that he intended to rob Bennett, but that Bennett grabbed the gun. Appellant later summarized the events as "[Bennett] tried to get the gun. I shot him. I tried to get the shit. I tried to leave. He grabbed me again. I turned around and shot him again." Appellant claimed that "it wasn't supposed to go like this, but it happened."

Appellant was charged by indictment with capital murder for killing Bennett during the course of committing or attempting to commit the offense of robbery. Appellant pleaded not guilty, and the matter proceeded to a jury trial. The jury found Appellant guilty of capital murder as charged in the indictment. The trial court imposed the statutorily-mandated sentence of imprisonment for life without parole,[1] and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In his sole issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. Specifically, Appellant contends there is no evidence that he intended to kill Bennett.

**Standard of Review**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson v. Virginia***, 443 U.S. 307,

---

[1] *See* TEX. PENAL CODE ANN. §§ 12.31, 19.03(b) (West 2011 & Supp. 2012).

2

315-16, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899-900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

**Applicable Law**

Capital murder is a result of conduct offense. *Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004). To support Appellant's conviction for capital murder, the State was required to prove that Appellant intentionally caused Bennett's death while in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2012). A defendant acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). An accused's intent can be inferred from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). A specific intent to kill may be inferred from the use of a deadly weapon per se. *Flanagan v. State*, 675 S.W.2d 734, 737 (Tex. Crim. App. 1982). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2012). Proof of the culpable state of mind is almost always proved by circumstantial evidence. *Warren v. State*, 797 S.W.2d 161, 164 (Tex. App.–Houston [14th Dist.] 1990, pet. ref'd). On the question of intent, the trier of fact is called upon to review all the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed. *Id*. at 164.

**Analysis**

Appellant concedes that the testimony establishes that he attempted to rob Bennett. Appellant contends, however, that the evidence fails to establish that he intentionally caused

3

Bennett's death.   We disagree.

The physical evidence at the scene established that Appellant shot Bennett twice.   The casing from the first shot was found several feet from Bennett's doorstep.   Thus, it appears that Appellant fired the first shot as he stood outside Bennett's house.   Appellant fired the second shot while he was inside the house.   There was no gunpowder on Bennett, which is not conclusive, but is consistent with Bennett's being farther than two feet away from Appellant when Appellant shot him.   Despite Appellant's claim to the contrary, the jury reasonably could have believed that at least one of these shots was intentional.

Moreover, the testimony supports an inference that Appellant intentionally shot Bennett. Martin claimed that Bennett spoke to the shooter, but that she did not hear the shooter respond to Bennett.   She heard only a gunshot a few seconds after Bennett spoke.   As she was running upstairs, she heard another gunshot.   One of Appellant's accomplices, Jesus Vela, Jr., testified that as soon as he heard a voice, Appellant fired the handgun.   And in his statement, Appellant explained the first shot, saying that he pulled the trigger because Bennett grabbed the barrel of the gun.   But as Appellant was leaving, Bennett grabbed Appellant's leg, and in response, Appellant turned and shot him again.   Appellant also said in his statement that he "did the biggest crime of all, [he] shot [Bennett]."   Further, rather than rendering aid to Bennett, Appellant fled the scene and disposed of the weapon.

Finally, Appellant's extrajudicial confession may be considered in our evidentiary sufficiency analysis.   *See* ***Emery v. State***, 881 S.W.2d 702, 705-06 (Tex. Crim. App. 1994).   Appellant confessed to shooting Appellant twice.   Appellant summarized his crime succinctly when he stated, "He tried to get the gun.   I shot him.   I tried to get the shit.   I tried to leave.   He grabbed me again. I turned around and shot him again."   Although Appellant claimed that it was not his intent to kill Bennett, we defer to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof.   *See* ***Brooks***, 323 S.W.3d at 899-900.   Accordingly, the jury could reasonably conclude that before he reached Bennett's home, Appellant did not intend to kill Bennett, while also concluding that, once there, whether as a result of panic or of losing control of the situation because of Bennett's actions, Appellant intended to kill Bennett by shooting him.   *See* ***Warren***, 797 S.W.2d at 164.   Further, the jury was instructed that a "firearm is per se a deadly weapon."   The jury was entitled to infer specific intent to kill based on Appellant's use of a deadly

weapon.  *See Flanagan*, 675 S.W.2d at 737.

The record contains scant evidence contrary to the jury's verdict.  Appellant and the accomplices all intended to rob Bennett, but they did not plan to kill him.  Nevertheless, they made certain that they were prepared to kill him if the need arose.  Before they went to Bennett's house, one obtained a rifle and Appellant obtained a handgun.  Also, Appellant dropped the drugs that he was trying to steal as he was exiting Bennett's house.  This is some indication that Appellant panicked.

Having examined the evidence of record in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant intentionally caused Bennett's death.  *See Brooks*, 323 S.W.3d at 899.  Therefore, we hold that the evidence is sufficient under the *Jackson v. Virginia* standard to support the trial court's judgment.  Appellant's sole issue is overruled.


### DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.


**BRIAN HOYLE**
Justice


Opinion delivered July 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)


5



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JULY 31, 2013**

**NO. 12-12-00390-CR**

**JACOB ALEXANDER WOODARD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 159th Judicial District Court

of Angelina County, Texas. (Tr.Ct.No. 2012-0227)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

6