**Opinion filed July 11, 2019**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00317-CR**

_____

**SAMUEL JUAREZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR25414**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Samuel Juarez, Jr. for the offense of felony murder. After a bench trial, the trial court found Appellant guilty of the lesser-included offense of manslaughter, and it assessed punishment at confinement for twenty years. We affirm.

A person commits the offense of manslaughter if he recklessly causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.04 (West 2019). In a single

issue on appeal, Appellant claims that the evidence is insufficient to support the conviction because the State failed to present sufficient evidence that he acted recklessly.

We review a sufficiency of the evidence issue to determine whether any rational trier of fact could have found Appellant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the factfinder's resolution of any conflicting inferences raised by the evidence and presume that the factfinder resolved any conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The evidence shows that, as Appellant drove his vehicle down a neighborhood street in Brownwood, he hit and killed D.F., the eight-year-old victim in this case.

On the day of the alleged offense, D.F. and his younger brother, T.F., were playing together in front of their grandmother's home in Brownwood. Teresa Fell is D.F. and T.F.'s grandmother. Fell testified that she was on her front porch when Appellant hit D.F. with his vehicle. According to Fell, D.F. and T.F. were in her driveway playing with a soccer ball. She saw the ball "go out to the street." She

saw one of her grandchildren run into the street to get the ball; at the time, she did not know whether D.F. or T.F. ran after the ball.

Although Fell did not see the impact, she testified that she saw Appellant drive his vehicle "pretty fast"; she first heard the "impact" and then heard brakes being applied. Fell did not see the impact because she looked away just before Appellant hit D.F. She also testified that she did not see the impact because there was a vehicle parked on the curb directly in front of her home and the vehicle blocked her view of the point of impact.

Juan Sanchez testified at Appellant's trial. At the time that Appellant was driving in front of Fell's house, Sanchez was traveling in the opposite direction and met Appellant. Sanchez noticed that D.F. was across the street from Fell's home. D.F. was near a telephone pole and was "bouncing [a] soccer ball." T.F. was on the curb near Fell's driveway playing in some leaves.

As Sanchez met Appellant, he noticed that Appellant was looking at his phone and did not appear to be paying attention to the roadway. Sanchez continued to watch Appellant in his left "side-view" mirror. According to Sanchez, "[n]ot even a second passed," and then he saw Appellant "hitting his brakes and then hit [D.F.]."

Appellant initially stayed at the scene but soon left in his vehicle, drove to his parents' house, and told them what had happened. Appellant's stepfather returned to the scene and told Stephanie Morgan, a sergeant with the Brownwood Police Department, that Appellant told him that Appellant "had just run over two kids." Sometime later, Brandon Johnson, a police officer with the Brownwood Police Department, located Appellant. Officer Johnson initiated a traffic stop and conducted field sobriety tests on Appellant. According to Officer Johnson, Appellant had bloodshot, glassy, and drooping eyes. Additionally, Appellant failed three sobriety tests. In Officer Johnson's opinion, Appellant "was very intoxicated."

3

Appellant admitted that he had consumed six sixteen-ounce tallboy "Bud Ice" beers. The test results of a subsequent blood draw revealed that Appellant's blood alcohol content was 0.276, more than three times the legal limit.

Clinton Hounshell is a certified peace officer employed by the Texas Department of Public Safety. Among other things, Trooper Hounshell had been trained in and was involved in "crash reconstruction" and "crash investigation." Trooper Hounshell testified that he went to the scene of the accident on the day of the alleged offense.

Trooper Hounshell utilized various reconstruction techniques to determine the minimum speed at which Appellant was driving when the skid marks left by Appellant's vehicle began. Trooper Hounshell determined that Appellant's speed at that point was at least thirty-one miles per hour; the speed limit at the scene was thirty miles per hour.

Trooper Hounshell also employed various techniques to determine the "general area of impact"— the point at which Appellant hit D.F. Trooper Hounshell testified that D.F.'s body lay sixty feet beyond the general area of impact. Trooper Hounshell found the first skid mark from Appellant's vehicle a "[l]ittle over seven feet" past the area of impact. That, according to Trooper Hounshell, indicated that Appellant had applied his brakes "after the area of impact."

The State also presented testimony from Texas Department of Public Safety Trooper James Jones. Trooper Jones had been involved in crash reconstruction since 1999. He agreed with the method that Trooper Hounshell used to calculate Appellant's minimum braking speed and agreed that Appellant's minimum braking speed was thirty-one miles per hour and that the estimated area of impact was as Trooper Hounshell had located it.

The record reveals that Appellant told Detective Robert Lee with the Brownwood Police Department that "sober, drunk, there was no faster reaction" and that "it was just instant when [D.F.] came out" from between two vehicles.

Dr. Dan Lewis Locker testified at Appellant's trial. According to Dr. Locker, Appellant's comment about "drunk or sober" was indicative of Appellant's inability, in his intoxicated state, to assess his own capabilities. Dr. Locker also testified that a blood alcohol level of 0.27 would constitute "[m]ajor impairment" of a person, that reaction time would be slowed considerably, and that "the ability to know your surroundings is significantly impaired."

Dr. Scott Morris also testified. He testified, "The higher the level of alcohol, the more pronounced the impairment of judgment, motor responses, [and] coordination." Dr. Morris also told the trial court, as did Dr. Locker, that high levels of intoxication can cause tunnel vision.

Bridget McGinty, a forensic scientist with the Texas Department of Public Safety, testified that a person typically experiences visual impairment between 0.09 and 0.25 blood alcohol level. She also testified that intoxication impairs peripheral vision, the ability to perceive color, motion, and "how far out you can see" and that it also results in a decreased response to stimuli. McGinty further gave her opinion that, at a 0.276 blood alcohol level, a person's ability to perceive the motion of a bouncing ball and the movement of a running child would be impaired.

Appellant's challenge to the sufficiency of the evidence is grounded on his contention that the State's evidence "was insufficient to prove he acted recklessly" because the State failed to prove that "he consciously disregarded a substantial and unjustifiable risk." Appellant does not deny that he was intoxicated, but he claims that, although he was intoxicated, his intoxication was not a cause of the incident.

5

According to Appellant, the incident was unavoidable whether he was "drunk or sober."

Manslaughter is a lesser included offense of murder. *Cavazos v. State*, 382 S.W.3d 377, 386 (Tex. Crim. App. 2012); *Moore v. State*, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). A person commits the offense of manslaughter "if he recklessly causes the death of an individual." PENAL § 19.04(a). The Texas Penal Code provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West 2011).

Generally, mental culpability must be inferred from the circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Fuentes v. State*, 880 S.W.2d 857, 860 (Tex. App.—Amarillo 1994, pet. ref'd).

As we have said, Appellant does not dispute that he was intoxicated when he struck D.F. with his vehicle. Although Appellant's blood alcohol content was 0.276 when the officer later found him, McGinty testified that Appellant's blood alcohol content could have been higher at the time of the accident. As a reasonable factfinder, the trial court could have inferred from this evidence alone that Appellant was aware of but acted with a conscious disregard of a substantial and unjustifiable

risk and that he, therefore, was reckless. *See Moya v. State*, 426 S.W.3d 259, 267 (Tex. App.—Texarkana 2013, no pet.); *Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) ("[T]he actions of driving under the influence of alcohol can be used to show a conscious disregard of a substantial risk."); *Porter v. State*, 969 S.W.2d 60, 64 (Tex. App.—Austin 1998, pet. ref'd); *see also Griffith v. State*, 315 S.W.3d 648, 652 (Tex. App.—Eastland 2010, pet ref'd).

Again, Appellant claims that "sober or drunk" there was no faster reaction time and that his intoxication was not a cause of the incident. Sanchez testified that Appellant would not have been able to see D.F. before the accident because D.F. was obstructed by Sanchez's vehicle. Sanchez testified that, if he had been driving Appellant's vehicle, he would have hit D.F. But Sanchez also said that he was able to see D.F. playing across the street from Fell's house and that he slowed down when he saw D.F. so that he could stop if he needed to stop. Sanchez was also able to see several other things in the brief period of time just before impact: D.F. bouncing a soccer ball by a telephone pole, T.F. lying down on a curb and playing in some leaves in Fell's yard, and Appellant looking at his cell phone just prior to the incident and not paying attention to the roadway. Although Sanchez saw all these things in a short period of time, Appellant, according to the evidence in the record, apparently did not see D.F.

The trial court was free to resolve any conflicting testimony, and as a rational factfinder, it apparently chose not to believe testimony that the incident was unavoidable given Appellant's intoxicated condition, actions, omissions, and words just before and after the incident. The trier of fact may believe all, some, or none of a witness's testimony because the trier of fact is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).

After a review of the record in the light most favorable to the verdict, we hold that the State presented sufficient evidence for the trial court to find beyond a reasonable doubt that Appellant acted recklessly and that he committed the offense of manslaughter. We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


July 11, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.